```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                    JACKSON DIVISION
```

VERDIA KING, ON BEHALF OF HERSELF AND                    PLAINTIFF
SIMILARLY SITUATED EMPLOYEES

VS.                                CIVIL ACTION NO. 3:06CV301TSL-JCS

KOCH FOODS OF MISSISSIPPI, LLC,                          DEFENDANT


<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the court on the motion of plaintiff Verdia King for conditional certification of an opt-in class, pursuant to 29 U.S.C. § 216(b). Defendant Koch Foods of Mississippi, LLC opposes the motion, and the court, for the reasons that follow, concludes that the motion is well taken and is due to be granted.

On June 2, 2006, plaintiff, an employee of Koch, owner and operator of multiple poultry processing plants in Mississippi, filed suit, seeking to recover, on behalf of herself and of "all individuals employed by Defendant in Mississippi since June 2, 2003," for "Defendant's violations of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201, <u>et</u> <u>seq</u>." Generally speaking, the complaint challenges defendant's alleged practice of failing to compensate its production workers for the time in activities related to donning and doffing special clothing and gear which it requires workers to wear while at their workstations and which "is

an integral and indispensable part of the principal activities for which the Workers are employed." With regard to King, the putative class representative, the complaint avers that, at all relevant times, she was employed at defendant's Morton plant as a production worker, who was required to don and doff specialized clothing, gear and equipment, and who was not "paid for all of her pre-production-line and post-production-line work," including time related to donning and doffing specialized clothing and gear.

By her motion, King (now joined by, at least, 440 individuals, who desire to "opt in" to the putative collective action) urges the court to conditionally certify a class, different from that proposed in the complaint. Specifically, she now purports to refine the putative class definition as follows: "All individuals employed by Defendant in Mississippi who, during any time period since June 2, 2003, were covered by the FLSA and performed jobs that required them to (i) sanitize themselves and/or (ii) wear, utilize, maintain, and/or sanitize any specialized clothing, gear, or equipment." For its part, defendant maintains that the motion for conditional certification should be denied for two primary reasons. First, it takes issue with plaintiff's attempt to gain relief for employees at defendant's two other Mississippi plants, asserting that because of numerous disimilarites between the plant in which King works and its two other Mississippi plants, relating to different

2

clothing requirements and timekeeping practices, King has not and cannot demonstrate that she is "similarly situated" to individuals employed at the other two plants.  Additionally, it contends that because plaintiff, in fact, is not a production-line worker but rather a maintenance employee, who is not subject to either the same clothing requirements or timekeeping policies as production-line employees, she is not similarly situated to production-line employees at the Morton plant where she works and therefore, may not act as their representative.

Section § 216(b) of the FLSA provides in pertinent part that

> [a]n action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer . . . in any Federal . . . court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

While § 216(b) provides for collective actions, unlike class actions brought pursuant to Rule 23 of the Federal Rules of Civil Procedure, putative plaintiffs must "opt-in" to the action, rather than "opt-out" of the lawsuit.  See 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

District courts have employed two methods to determine whether a FLSA collective action should be certified.  See Mooney v. Aramco Svcs. Co., 54 F.3d 1207, 1212 (5th Cir. 1995) (abrogation on other grounds recognized Rachid v. Jack in the Box, Inc., 376

3

F.3d 305, 311 n. 10 (5th Cir.2004))). The first approach focuses on whether the putative class plaintiff is "similarly situated" to the members of the proposed class. Id. at 1213. Other courts utilize the Rule 23 class certification inquiry. Id. at 1214. As the majority of trial courts in this circuit have applied the former approach and as neither of the parties has advocated the Rule 23 approach, the court concludes that the two-step inquiry should be used in the case at bar.

Under the two-step approach:

The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision-usually based only on the pleadings and any affidavits which have been submitted-whether notice of the action should be given to potential class members.

Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.

The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives-i.e. the original plaintiffs-proceed to trial on their individual claims.

Id. at 1213-1214.  At the notice stage, "'courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination.'"  Id. at 1214 n.8 (citing Sperling v. Hoffman-La Roche, Inc., 118 F.R.D. 392, 407 (D.N.J. 1988).

Here, the complaint broadly proposes a class comprised of "all individuals employed by Defendant in Mississippi since June 2, 2003."  However, the court's review of the complaint reveals that the actual substance of the "collective action" allegations is that defendant has a practice of failing to pay its production-line workers for donning and doffing of specialized clothing.  Specifically, under the heading "DEFENDANT'S COMMON BUSINESS PRACTICES," the complaint charges that defendant directly employs a large number of "production workers" (or "Workers"), who perform labor and are paid on an hourly wage and are not exempt from the wage and hour requirements set forth in the FLSA.  Within this section of the complaint, the complaint further recites:

> Due to the nature of their jobs, the Workers
> must don various clothing and gear necessary
> to ensure sanitary Plant conditions and
> protect themselves from injury. . . .
>
> Pursuant to Defendant's common business
> practices, at the commencement of the workday,
> the Workers receive and don the above-
> described clothing/gear in common pick-
> up/changing areas.  The Workers then travel to
> their workstations within the plaint and wait

>> for production work to begin.  The Workers'
>> pay period does not begin until the production
>> work actually begins.  Additionally, the
>> Workers' pay period does not begin until the
>> production work actually begins.
>> Additionally, the Workers' pay period
>> sometimes ends before the production work is
>> complete.
>>
>> Pursuant to Defendant's common business
>> practices, the Workers are not compensated for
>> all time spent waiting for their
>> clothing/gear, picking up their clothing/gear,
>> donning their clothing/gear, waiting for
>> equipment, traveling to their workstations,
>> for production work to begin.  Furthermore,
>> the Workers are not always compensated for all
>> their time actually spent completing the
>> production work.

These paragraphs are incorporated by reference under the heading "Collective Action Allegations."  Regarding King, as previously stated, the complaint recites that at all relevant times she was "employed by Defendant in its Morton, Mississippi Plant as a production line worker. . . .  Plaintiff was required to don and doff various clothing gear, and equipment. . . . Plaintiff was not paid for all her pre-production-line and post-production-line work."

The complaint seems to adequately set forth that production-line workers were the victims of "a common policy or plan," i.e., a plan or policy by which defendant failed to pay production-line employees for pre- and post-production donning and doffing of specialized clothing and gear.  See Anderson v. Cagles, Inc., Civil Action No. 1:00-CV-166-2, (M.D. Ga. July 11, 2002)

6

(conditionally certifying class of chicken plant production employees who, although employed at different plants, alleged that their pay was calculated in the same manner and that they had not been compensated for time spent donning and doffing protective clothing and gear); Aguilar v. Pilgrim's Pride Corp., Case No. CV-06-J-1673-NE, slip op. at 4 (N.D. Ala. January 31, 2007) (certifying class of "line-time" chicken plant workers based on allegation that they were not paid for donning and doffing protective gear).

    This being said, however, discovery has revealed that King is not a production-line worker, but rather is a maintenance worker in the plant.  Apparently recognizing the difficulty that this discovery creates, plaintiff, appealing to the court's power to "modify class definitions to provide the necessary precision," In re Monumental Life Ins. Co., 365 F. 3d 408 (5th Cir. 2004), proposes a refinement of the class definition, one which would also encompass her and other non-production line plant workers. Specifically, she now forwards the following definition: "All individuals employed by Defendant in Mississippi who, during any time period since June 2, 2003, were covered by the FLSA and performed jobs that required them to (i) sanitize themselves and/or (ii) wear, utilize, maintain, and/or sanitize any specialized clothing, gear, or equipment."  With regard to the modified definition, King urges the court to "focus on the central

7

factual and legal issue of this case: Whether Plaintiffs and other workers are paid for time spent engaged in compensable pre-shift and post-shift donning, doffing, waiting, and travel." According to plaintiff, the numerous disimilarities in job and pay requirements can be sorted out after discovery and after defendant has moved to decertify the conditional class. Utilizing the "fairly lenient" standard to be employed at this stage of the litigation, the court is persuaded that King is similarly situated to the workers set forth in the modified definition and that her motion for conditional certification should be granted. In making this decision, the court is aware that discovery may show that certain plaintiffs are not similarly situated, and if this is the case, the court can decertify the class or can create subclasses. See Rodolico v. Unisys Corp., 199 F.R.D. 468, 484 (E.D.N.Y. 2001) ("If, at a later point in the litigation, the Court finds that a collective action cannot accommodate the proposed individual defenses, the Court has the discretion to create subclasses or to dismantle the collective action.").

Based on the foregoing, it is ordered that plaintiff's motion for conditional class certification is granted.

SO ORDERED, this the 10th day of April, 2007.


                                  /s/ Tom S. Lee
                                  UNITED STATES DISTRICT JUDGE

9